**GARBER, Plaintiff-Appellee v CHRYSLER CORPORATION et, Defendants-Appellants.**

Ohio Appeals, 2nd District, Montgomery County.

No. 1730. Decided February 26, 1943.

H. H. Durst, Dayton; Victor Jacobs, Dayton, for plaintiff-appellee.

Landis. Ferguson, Bieser & Greer, Dayton, for defendants-appellants.

## OPINION

By HORNBECK, J.

This is an appeal on questions of law from a judgment entered on a general verdict of a jury in behalf of the plaintiff against the defendants in the amount of $2,000 with interest and costs. The following errors are assigned:

1. & 2. Failure of the court to direct a verdict for both defendants at the close of plaintiff's case and at the close of all the evidence of the case.

3. Error in the admission and exclusion of evidence.

4. Failure of the court to give Special Interrogatory No. 6 requested by defendants.

5. Error of the court in refusing to require the jury to answer all the interrogatories submitted.

6. Error of the court in overruling the motion of defendant, Aetna Life Insurance Co. for judgment in its favor upon the answers of the jury to Special Interrogatories No. 5 and 7.

7. Error of the court in overruling motion of defendant, Chrysler Corporation. for judgment veredicto non obstante.

8. Error of the court in overruling motions of both defendants for a new trial.

Assignments Nos. 3 and 4 are not pressed in the brief of counsel for appellants.

The facts essential to an appreciation of the errors assigned are that, the issues arise upon an amended petition. separate answers of defendants, Chrysler Corporation and Aetna Life Insurance Co., and separate reply to the answer of each defendant. Plaintiff in her amended petition avers that Raymond Garber on June 17, 1937,

entered into the employ of defendant, the Chrysler Corporation, and was subsequently laid off. Thereafter, on Oct. 28, 1940, Raymond Garber was reinstated to work for said corporation and on that date made application for group insurance issued by said defendant. Chrysler Corporation, and/or the defendant, The Aetna Life Insurance Co. Said Raymond Garber remained continuously in the employ of defendant, the Chrysler Corporation, until the time of his death * * *. That during his employment Raymond Garber worked 197 hours. That on Oct. 28, 1940, Garber authorized in writing the deduction of certain moneys, amount unknown to plaintiff, from his wages and authorized the payment of said sums to said defendants for an insurance policy which the defendants agreed to issue to him on his life in the amount of $2,000, which policy provided that said sum would be paid to the named beneficiary, who was the plaintiff, in the event of the death of the insured. Said policy of insurance was never delivered by the defendants to the decedent or to his beneficiary. On Nov. 21, 1940, Raymond Garber died. It is further averred that Raymond Garber and the plaintiff had observed all conditions by them to be performed under the terms of said insurance policy and prayed for judgment in the sum of $2,000 with interest and costs. The answer of the defendant, the Chrysler Corporation, admits the death of Raymond Garber as alleged that on Oct. 28, 1940, he became an employee of the Chrysler Corporation and at that time signed an application for a certificate under the policy of group insurance issued by the Aetna Life Insurance Co., generally denies other allegations of the petition and specifically denies that said corporation agreed to issue an insurance policy on Raymond Garber's life for $2,000 or for any other sum but says that the application signed by Garber for the certificate under the group policy provided that it would not be effective until thirty days from its date, which was October 28, 1940, and that Garber died before the thirty day period had expired. The answer of defendant, the Aetna Life Insurance Co., is identical with that of the Chrysler Corporation as to the death of Garber, his application for a certificate under the group policy of insurance, generally denies the allegations of the petition and specifically denies that the Aetna Life Insurance Company agreed to issue a life insurance policy to Garber for $2,000 or for any other sum but says that group policy No. 4465 issued to (meaning by) this defendant to cover certain employees of the Chrysler Corporation provided that,

"Employees entering service on or after January 21, 1933, shall become eligible for insurance under this policy only upon the completion of one month of continuous active service."

Defendant further says the application for insurance which Garber made under the group policy on October 28, 1940, provided that the insurance would not be effective until thirty days from date

and that Garber died before the expiration of said thirty days and before he had completed one month of continuous active service with the Chrysler Corporation. The plaintiff filed a reply to each answer which reply was a general denial. The answers of the defendants had originally been filed to the petition of the plaintiff and were thereafter refiled as answers to the amended petition. The cause came on to be tried by judge and jury. At the conclusion of the plaintiff's case both defendants moved for a directed verdict. The motions were overruled and renewed at the conclusion of the case and again overruled.

Defendants tendered seven special interrogatories which they requested to be answered in case a general verdict was returned. The trial judge submitted six of these interrogatories, refusing to present No. 6. The jury returned its general verdict as heretofore stated and answered the interrogatories submitted in the manner hereinafter indicated.

Special Interrogatory No. 1. Did the application for insurance signed by Mr. Garber on Oct. 28, 1940, contain the provision, "insurance effective thirty days from date"?

Answered by 9 members of the jury, three of whom answered Yes; six answered No.

No. 2. Did Mr. Garber die before the expiration of the thirty day period from the date of that application?

Signed by ten members of the jury, all of whom answered Yes.

No. 3. Did the Master Policy issued by the Aetna Life Insurance Co. to the Chrysler Corporation contain a provision effective Jan. 21, 1933, that "employees in service on or after Jan. 21, 1933, shall become eligible for insurance under this policy only upon the completion of one month of continuous active service?

Nine jurors replied to this interrogatory, five answering No, and four answering Yes.

No. 4. Did either of the defendants agree to insure the life of Raymond Garber, effective on his return to work on Oct. 28, 1940?

Ten jurors responded to this interrogatory, eight of whom answered Yes, two, No.

No. 5. Was there any insurance contract between the Aetna Life Insurance Co. and Raymond Garber on Nov. 20, 1940, the date of his death, insuring Raymond Garber's life?

Ten jurors signed the answer to this interrogatory, all of whom answered, No.

No. 6. If your answer to No. 5 is "Yes" of what did that contract consist?

(This interrogatory was tendered and refused by the court.)

No. 7. Did the application for insurance signed by Mr. Garber on Oct. 28, 1940, contain a provision, "insurance effective on return to work"?

Nine jurors responded to this interrogatory, all of whom answered No.

When the jury returned its general verdict, counsel for the defendants called the attention of the Court to the fact that the answers to some of the interrogatories had not been concurred in by nine or more of the jurors and requested the Court to instruct the jury to answer all interrogatories submitted to them. The Court observed,

"I think the jury did the best they could under the circumstances. I think they had the case under consideration a long enough period of time. The court will overrule the motion."

To which ruling of the court counsel for the defendants noted exceptions. Counsel, also, at the same time moved the court to render judgment for the Aetna Life Insurance Co. in view of the answers to certain interrogatories, especially No. 5, and thereafter included No. 7. Defendant, the Chrysler Corporation, also moved the court for an order for judgment in its favor notwithstanding the verdict of the jury and both defendants filed motions for a new trial all of which motions were overruled and judgment entered on the verdict. We will, insofar as is feasible, consider the errors assigned in the order in which they appear in the briefs of counsel for defendants.

1. & 2. Failure of the court to direct a verdict for both defendants at the close of plaintiff's case and at the close of all the evidence of the case, present substantially the same question, inasmuch as the only evidence offered by the defendants in chief was a photostatic copy of the application signed by Raymond Garber on October 28, 1940, and the plaintiff upon a short cross-examination.

The cause of action of the plaintiff is predicated upon the claim that the defendants, either or both, agreed to issue an insurance policy to Raymond Garber insuring his life in the sum of $2,000 and naming plaintiff as the beneficiary, and averring performance on the part of the insured, and asserting that defendants had breached the contract. There is not a scintilla of evidence that the Chrysler Corporation, as such, issued or agreed to issue any insurance to Raymond Garber on his life. It is obvious from the Master Policy, riders thereto, application for insurance, and all other evidence in the record that insurance, if any, which should have been issued on the life of Raymond Garber, was to be written by the Aetna Life Insurance Co. If the Chrysler Corporation was derelict in any particular it could not be made the basis of a recovery upon the cause of action ex contractu here sued upon. The trial judge upon the motion of the Chrysler Corporation should have directed a verdict in its behalf at the conclusion of plaintiff's case.

The first two assignments of error as they affect the Aetna Life Insurance Co. require consideration and interpretation of the

rights of the plaintiff as the widow of Raymond Garber under the terms of the Master Policy wherein the defendant, the Aetna Life Insurance Co., is the insurer, the Chrysler Corporation the employer, and designated employees of the Chrysler Corporation and its subsidiaries were insured and thereafter to be insured, the pertinent riders to said Master Policy, the applications of Raymond Garber for insurance and the evidence appearing in the record.

It appears that on June 17, 1937, Raymond Garber entered the employ of the Airtemp Division, Chrysler Corporation, Dayton, Ohio. His record card as appearing in the files of the Chrysler Corporation was introduced by plaintiff through the testimony of Thomas Wm. Simpson, factory auditor for said division. The record card had certain key letters or symbols which the auditor explained, which, as applied to the record card of Raymond Garber, disclosed that he was employed as heretofore stated as a punch press operator, that on July 21, 1937, he was transferred to the assembler-unit, and that on July 30, 1937, he was laid off. That on Oct. 28, 1940, he was re-instated and employed as a square shear operator and again laid off Nov. 20, 1940. At the time that the Master Policy was issued on May 1, 1929, it provided among other things that,

"All employees of the Chrysler Corporation are eligible for insurance hereinunder from the time the insurance plan takes effect at the respective divisions, (which for the Airtemp Division of Chrysler Corporation was June 1, 1929) and in the case of new employees from the date employment begins. That the effective date of individual insurance for each eligible employee who has agreed to make the required contribution towards the cost of the insurance shall be as of such dates of eligibility; as to all employees who make written application to the employer for insurance hereinunder on or before the dates of their eligibility shall be from the dates when they make application for insurance, as to all employees who make written application to the employer within thirty-one days after the dates of their eligibility; that as to any employee who makes written application to the employer more than thirty-one days after their dates of eligibility the company reserves the right to require evidence of insurability and if such evidence is satisfactory to the company said employee shall be insured from the date such evidence is received by the company."

Many riders throughout the years are attached to the Master Policy. The one which has special application to this case of date, August 19, 1933, provides,

"Effective on and after Jan. 21, 1933:

Employees entering service on or after Jan. 21, 1933, shall become eligible for insurance under this policy only upon the completion of one month of continuous active service."

When plaintiff's decedent entered the employ of the Chrysler Corporation on June 17, 1937, he signed what is designated an in-

dividual application for group insurance in which he applied for insurance in the amount of $2,000, * * * "in accordance with the terms in the group policy issued to my employer" and authorized the deduction of forty cents per week from his wages. This application carries on it what is testified was placed there by a stamp, "Insurance effective thirty days from date." There is a notation at the bottom of the application "Canc. July 30, 1937" the date in 1937 of the lay off of plaintiff's decedent from the employment of the Chrysler Corporation. Whether or not any certificate of insurance was issued to plaintiff's decedent on this application does not appear.

On the 28th of October, 1940, when plaintiff's decedent again went to work for the Chrysler Corporation, a like application for insurance was signed by him in which plaintiff was named as beneficiary and stamped in the upper left hand corner of this application appears the words "Insurance effective thirty days from date," and immediately below the words "or return to work" are stricken out by lines drawn through these words. Mr. Fulton testified that no certificate was issued to plaintiff's decedent and there is no evidence which tends to refute this statement. This witness also testified that the stamp containing, "Insurance effective: 30 days from date on return to work" was stamped upon the application before it was signed by plaintiff's decedent and that at the time the application was made up the applicable words were left upon the application and the inapplicable words stricken out. It was the opinion of the witness that he had taken the application of plaintiff's decedent in October, 1940, when it was signed. There is no other or further testimony on this subject.

It further appears by introduction of exhibits on behalf of the plaintiff that plaintiff's decedent received payments under the employment begun Oct. 28, 1940 on four occasions. On these vouchers there appears the gross pay, the itemized deductions therefrom and the net pay. No deduction was made from the pay due plaintiff's decedent for insurance premiums. So that, it fairly appears that no action was taken by the Chrysler Corporation to deduct the forty cents per week from the wages of plaintiff's decedent to pay his insurance as authorized by him in his last application.

Most of the controversy in the case revolves around a determination of the meaning of the "rider" heretofore quoted in connection with the terms of the Master Policy and the language of the application and particularly to the words stamped on the application "insurance effective 30 days from date". Obviously, the correct answer to these questions is determinative of the rights of the plaintiff inasmuch as plaintiff's decedent died prior to thirty days after the date of his application for insurance of October 28, 1940. The trial judge said to the jury that if its members found that the application of date, Oct. 28, 1940, contained the provision "Insur-

ance effective 30 days from date" with the other wording crossed off, the plaintiff could not recover but that if the wording "Insurance effective 30 days from date" and "on return to work" were not scratched off, then it was for the jury to say whether or not the plaintiff should recover in accordance with the testimony.

It is our judgment, that the question whether or not plaintiff's decedent was entitled to insurance under his application is not determined by the language of the stamp thereon, namely, "Insurance effective 30 days from date" but by the terms of the policy in connection with the pertinent rider thereto and the wording of the application proper. The insurance company could not be bound by the language of the stamp on the application because it does not appear with sufficient definiteness that it was authorized to be placed there by the insurance company, nor could plaintiff's decedent's rights be controlled by the language of the stamp. The sole effect of the stamp on the application was to advise the applicant of the construction which the insurance company or the Chrysler Corporation was placing upon his rights under the Master Policy and his application.

Two material questions arise upon the language of the rider on the Master Policy of date effective on and after Jan. 21, 1933. The rider provides "Employees entering service on or after January 21, 1933, shall become eligible for insurance under this policy only upon the completion of one month of continuous active service." The first question then is what was meant by an employee entering service on or after Jan. 21, 1933. The second, what was meant by the completion of one month of continuous active service.

It was incumbent upon the plaintiff to establish her decedent's eligibility for insurance under the language of the rider and to do so, she was required to prove that prior to Raymond Garber's death and after his application for insurance, he had completed one month of continuous active service with the Chrysler Corporation. This proof was not forthcoming.

The employee's record card which was introduced and interpreted by Mr. Simpson, factory auditor for the Airtemp Division of the Chrysler Corporation falls far short, in its most favorable interpretation, of proof that in his first employment plaintiff's decedent worked continuously for one month in the active service of the Chrysler Corporation, nor is there any evidence from any other source to the effect that he was so employed.

Plaintiff testified but she was not called upon to answer the question whether or not his service on and after June 17, 1937, was continuous until he left the employ of the corporation on July 30, 1937. There was no attempt to produce the payroll record of the Chrysler Corporation which would have shown the days and dates

of the employment of plaintiff's decedent in the 1937 employment. All that appears upon the record card is as consistent with intermittent service between June 17, 1937, and July 30, 1937, as it is with continuous employment during that period.

There is no doubt as to the interpretation of the language "completion of one month of continuous active service". If plaintiff's decedent had not completed one month of continuous active service when he left the employment of the Chrysler Corporation in July, 1937 then when he made his application in October, 1940, he was not eligible for insurance until after that time he had conformed to the rider, namely, had worked one month continuously in active service. This duration of work was not claimed and could not be substantiated under the admitted facts. It follows then that upon the conclusion of the plaintiff's case the Court should have sustained the motion of defendant, the Aetna Life Insurance Company, for a directed verdict in its behalf.

Inasmuch as the answer to the second question raised by the rider is determinative of the rights of the parties, it will not be necessary for us to answer the other question. If, however, this first question could properly be reached, it would be one of factual determination, namely, what was reasonably in contemplation of the parties when they used the language "Employees entering service on or after Jan. 21, 1933, shall become eligible for insurance" as applied to the facts in this case. Here plaintiff's decedent worked for a period in 1937, beginning on June 17 and ending July 30, and did not resume work until October, 1940. In this connection, consideration should be given to the terms of the Master Policy which we have heretofore quoted defining the effective date of individual insurance. If it appeared that an employee beginning work after the date of rider had completed a full month's continuous active service there is indeed much in the rider of January 21, 1933 to support the claim that such employee would thereby become eligible for insurance even though the application was not made until after he had subsequently resumed employment with the company. If this resumption was more than thirty-one days after the conclusion of his former employment then the company reserved the right to require evidence of insurability and only upon determination that such evidence was satisfactory to the company would the employee be insured. "Effective date individual insurance" (C) page 2 policy. There is nothing in the record in this case upon which determination could have been made as to the right of plaintiff's decedent to insurance under the applicable provision which we have just discussed.

In view of our opinion upon the major and controlling question in this case, we will consider only briefly the other errors assigned.

4. Failure of the Court to give Special Interrogatory No. 6.

The court properly refused to submit this special interrogatory. The answer which was required to have been made by the jury is not within contemplation of

the terms of §11420-17 GC.

5. Error of the Court in refusing to require the jury to answer all the interrogatories submitted.

This action of the court complained of was erroneous but probably not prejudicial for reason the discussion of which would needlessly prolong this opinion.

The obligation of the court under §11420-17 GC to require the jury to make a finding on questions of fact which can only be done by the concurrence of three-fourths or more of its members, is as imperative as it is to require the concurrence of such number before accepting a general verdict. The section provides that the verdict and finding must be entered on the journal and filed with the clerk. That is to say, the general verdict and the findings of fact are essential to completed action of the jury when a special finding is requested by either party. Upon this record, as to those special interrogatories wherein three-fourths or more of the jury had not concurred in their answers there were no findings of fact and without them the general verdict was ineffective and should not have been accepted, for the obvious reason that the purpose of a special finding is to enable the trial judge to test the correctness of a general verdict in the light of that finding. The action of a trial judge upon receiving a general verdict together with proper special interrogatories which have not been legally answered leaves the case undecided by the jury in material particulars, and denies to the party tendering the questions the right to which he is entitled under the statute §11420-17 GC.

6. Error of the Court in overruling the motion of defendant, Aetna Life Insurance Co. for judgment in its favor upon the answers of the jury to Special Interrogatories No. 5 and 7.

This motion should have been sustained, particularly upon the answer to Special Interrogatory No. 5 which established that there was no contract of insurance between the Aetna Life Insurance Company and Raymond Garber insuring his life as of the date of his death.

7. Error of the Court in overruling motion of defendant, Chrysler Corporation for judgment veredicto non obstante.

It follows from what we have heretofore said that this motion should have been sustained.

8. Error of the court in overruling motions of both defendants for a new trial.

This assignment of error is also well made.

The judgment will be reversed and judgment entered for both defendants and cause remanded.

GEIGER, P. J. and BARNES, J., concur.